# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

IVAN LEE MATTHEWS,

         Plaintiff,

     v.

KIM HOLLAND,

         Defendant.

Case No. 1:14-cv-01959-SKO (PC)

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

**(Doc. 22)**

**THIRTY (30) DAY DEADLINE**

## I.  INTRODUCTION

Plaintiff, Ivan Lee Matthews, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  The Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found that it stated a claim for damages under the Eighth Amendment of the United States Constitution against Defendant Holland, the warden at California Correctional Institution ("CCI").  (Doc. 12.)  On December 29, 2015, Defendant filed a motion to dismiss (Doc. 15), which was granted with leave to amend, (Doc. 20).  Plaintiff filed the First Amended Complaint ("FAC") on July 1, 2016.  (Doc. 21.)  Defendant filed a motion to dismiss the FAC.  (Doc. 22.)  Plaintiff filed his opposition (Doc. 24) to which Defendant replied (Doc. 25).  The motion is deemed submitted.  L.R. 230(*l*).  For the reasons discussed herein, Defendant's motion is **DENIED.**

## II.  LEGAL STANDARD

Dismissal is proper under Rule 12(b)(6) if there is a lack of a cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory.  *Conservation Force v.*

1

*Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1762 (2012).  To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party.  *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000).  Pleadings of prisoners proceeding *pro se* are liberally construed and any doubt is resolved in the inmate's favor.  *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

## III.  DISCUSSION

### A.     The First Amended Complaint

The events alleged in Plaintiff's complaint occurred from May 30, 2014, to July 8, 2015, while he was incarcerated at the California Correctional Institute ("CCI") in the administrative segregation unit ("ASU"), awaiting transfer to the general population ("GP").  (Doc. 21, ¶¶ 8, 24.) Plaintiff alleges that on May 30, 2014, Defendant Warden Kim Holland, implemented a new policy called "the guard one safety/security checks" ("Guard One Policy").  (*Id.*, ¶10.)  Under the Guard One Policy, every "5, 10, 15, 20 minutes - 24-hours a day," correctional officers used a metal bar to loudly bang and hit another metal object on inmates' cell doors which let out a "loud beep or whistle."  (*Id.*, ¶9.)  Plaintiff alleges that the noise was excessive, extremely loud and violated his rights under the Eight Amendment.  (*Id.*, ¶10.)

Plaintiff asked the correctional officers why they were doing that and informed them they were causing him pain and depriving him of sleep.  (*Id.*, ¶11.)  The officers responded that they were aware and wanted the inmates "to 602-appeal it" so that it would stop because they did not like it either, but that it was not going to stop until an inmate appealed and stopped it.  (*Id.*, ¶¶11-

13.)  When Plaintiff asked who ordered it, different correctional officers responded it had been ordered by Warden Holland, "mental health," and Sacramento.  (*Id.*)  Mental health psych-techs were also "required to beep" when they did their rounds and they responded to Plaintiff's inquiry that Warden Holland had ordered it.  (*Id.*, ¶14.)

A couple days after the Guard One Policy was implemented, the nurse brought Plaintiff pain medication that had been previously prescribed for him after a surgery on his neck.  (*Id.*, ¶15.)  Plaintiff told the nurse that the Guard One Policy was causing him "severe-pain, lack of sleep, psychological-pain/suffering." (*Id.*)  The nurse responded that she could prescribe sleeping pills for him, but Plaintiff would not be able to continue taking his current pain medication because of potential, serious side effects.  (*Id.*)  Plaintiff chose to remain on his pain medication. (*Id.*, ¶15.)

On June 8, 2014, Plaintiff wrote a "cdcr-inmate-22-request for interview form" to Warden Holland informing her that correctional officers were causing excessively loud noise for which there was no need, thereby depriving him of reasonable sleep; however, she failed to take measures to stop it.  (*Id.*, ¶16.)  That same day, Plaintiff also sent a "cdcr-inmate-22-request for interview form" to the ombudsman in Sacramento in which he requested information regarding the Guard One Policy and a copy of the policy.  (*Id.*, ¶17.)  Plaintiff met with a representative of the ombudsman's office on June 25, 2014, and was told that the Guard One Policy is only required to be used for the first twenty-one days that an inmate is in ASU, that Sacramento ordered it, and that the policy only requires correctional officers to run beep checks once every thirty minutes.  (*Id.*, ¶18.)  Plaintiff alleges that all three of the above requirements were "being violated and arbitrarily misused" by Warden Holland and correctional officers which amounted to a violation of his rights under the Eighth Amendment.  (*Id.*)

Plaintiff alleges that Warden Holland deprived him of an environment reasonably free from excessive noise, failed to stop the Guard One Policy on inmates who were not in ASU for disciplinary reasons, and failed to stop correctional officers from doing the banging/beeping checks on his "cell-door-every-5-10-15-20-minutes-24-hours-a-day and night." (*Id.*, ¶19.) Plaintiff alleges this subjected him to "extreme, excessive-loud-noise, when there was no need for

it." (*Id.*)  Plaintiff further alleges that Warden Holland is responsible for the officer's actions of loudly banging on his cell door, failed to respond to his request for an interview, and "illegally formulated" the Guard One Policy "on inmates" such as Plaintiff who are in ASU more than twenty-one days and are not suicidal.  (*Id.*, ¶¶ 20-22.)

On June 16, 2014, Plaintiff filed a "602 appeal" complaining about the Guard One Policy; he was interviewed by Sergeant Ybarra on July 15, 2014.  (*Id.*, ¶23.)  Sgt. Ybarra told Plaintiff they had investigated the matter and found that officers were not banging or hitting on the cell doors, it was being properly implemented and the mechanisms used did not emit excessively loud beeps.  (*Id.*)

Plaintiff alleges that the Guard One Policy continued to be implemented and caused "extreme and excessive-loud-noise . . . every night, often all night, interrupting and preventing [him] from sleeping, when there was no need for the excessive-loud-noise." (*Id.*, ¶27.)  The Guard One Policy, and the way it was implemented, allegedly caused a violation of Plaintiff's "clearly established constitutional rights" and resulted "in amongst other things-(psychological-pain/treatment, nervousness, sleep-deprivations, unable to take sleeping-pills, anxiety, and an environment-not-free of excess-loud-noise.)" (*Id.*, ¶33.)

**B.**     **Plaintiff States a Claim for Violation of His Eighth Amendment Rights**

Defendant contends that Plaintiff does not state a claim for violation of his Eighth Amendment rights.  (Doc. 22, pp. 5-7.) Defendant state that Plaintiff fails to show that Defendant caused Plaintiff to suffer injury (*id.* at 5:5-6:13), and that Plaintiff suffered no constitutional injury from exposure to beeping or deprivation of sleep (*id.*, at 6:14-7:22).

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).  To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference. . . ."

4

*Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer* at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Temporarily unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson*, 45 F.3d 1310, *ref. Hoptowit*, 682 F.2d at 1258 (*abrogated on other grounds by Sandin*, 515 U.S. 472 (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)). Thus, Plaintiff's factual allegations as to the Guard One Policy and its implementation during his confinement in CCIs ASU must be evaluated to determine whether they deprived Plaintiff of a basic human need.

Conditions which result in chronic, long term sleep deprivation may support a claim under the Eighth Amendment. *See Chappell v. Mandeville*, 706 F.3d 1052, 1057-61 (9th Cir. 2013); *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996); *LeMaire v. Maass*, 12 F.3d 1444, 1460 (9th Cir. 1993). Thus, Plaintiff's allegations that the Guard One Policy checks were conducted and resulted in loud beeps in 5, 10, 15, and 20 minute intervals, 24 hours a day, every day from May 30, 2014 through June 8, 2015, which resulted in his inability to sleep is sufficiently extreme to meet the objective element of a conditions of confinement claim. *Hudson*, 503 U.S. at 9.

Subjectively, if an objective deprivation is shown, a plaintiff must demonstrate that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160; *Johnson*, 217 F.3d at 733. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could

be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Thus, Plaintiff's allegations must establish that Warden Holland was aware that the Guard One Policy or the manner in which it was implemented posed a substantial risk of serious harm to Plaintiff.

Since Plaintiff does not allege that Warden Holland was personally walking through the ASU conducting the Guard One Policy checks, Plaintiff must show that Warden Holland knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A plaintiff may state a claim for supervisory liability based on the supervisor's knowledge of and acquiescence in unconstitutional conduct by others. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). A fundamental premise of this form of liability requires that the actions or inactions by subordinate staff amount to a cognizable claim for violation of a plaintiff's constitutional rights and that the supervisorial defendant have knowledge of such conduct.

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.* Therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).

Plaintiff's allegations do not show that the Guard One Policy, which Warden Holland allegedly implemented, was so deficient that "the policy 'itself is a repudiation of constitutional rights' and is 'the moving force'" behind the violation of Plaintiff's rights as alleged in this action. *Hansen*, 885 F.2d at 646. Instead, Plaintiff alleges that the ombudsman's representative personally met with Plaintiff and discussed the Guard One Policy with him and explained that there was a lot of false and misleading allegations being made about the Guard One Policy. (Doc. 21, ¶18.) It was further explained that the Guard One Policy only required checks on inmates who had just been placed in ASU for no more than twenty-one days and that "Sacramento had ordered it." (*Id.*) The Guard One Policy checks only required correctional officers to "beep/check" every thirty minutes to an hour." (*Id.*) In response to Plaintiff's 602-appeal, Sgt. Ybarra indicated that "during first watch checks, the recording-pipe does not emit an audible tone." (*Id.*, ¶23.) This description of the Guard One Policy does not amount to a moving force violating Plaintiff's right to conditions of confinement free from excessive noise.

Plaintiff's allegations also fail to show that Warden Holland knew that the manner in which correctional officers were implementing the Guard One Policy was violating Plaintiff's constitutional rights and failed to take preventative measures. Although Plaintiff filed a 602-appeal and submitted a form 22 to be interviewed by the ombudsman, neither of these actions would have placed Warden Holland on notice that the Guard One Policy was being implemented by officers in a manner that violated Plaintiff's rights. (*See id.*, ¶¶18, 23.) As previously discussed, in his form 22 request for interview with the ombudsman, Plaintiff sought information about the requirements of the Guard One Policy and who implemented it, but did not complain that it was being wrongly implemented or was causing a violation of his rights. (*Id.*, ¶18.) While his 602-appeal complained about the Guard One Policy and "the extreme-loud noise, caused by correctional officers-excessive-loud banging and hitting" Plaintiff's cell door, the ensuing investigation found no malfeasance by correctional guards in their implementation of the Guard One Policy which would have placed Warden Holland on notice of any dilatory actions by her subordinates. (*Id.*, ¶23.) Nor does Plaintiff state any allegations to show that Warden Holland was aware of, or saw his 602-appeal, so as to have been placed on notice of Plaintiff's

1  contentions.

2      Plaintiff alleges, however, that he submitted a form-22 request for interview to Warden

3  Holland on June 8, 2014, in which he informed her that correctional officers were implementing

4  the Guard One Policy in a way that created loud noise when there was no need for it, thereby

5  depriving him of the basic need for sleep.  (Doc. 21, ¶16.)  Plaintiff alleges that he continued to

6  be exposed to the conditions that deprived him of sleep through July 8, 2015.[1]  (*Id.*, ¶¶23, 24.)  At

7  the pleading stage,[2] these allegations generally suffice to state a cognizable claim based on

8  Warden Holland's "knowledge of and acquiescence in unconstitutional conduct by his or her

9  subordinates." *Starr v. Baca,* 652 F.3d 1202, 1207 (2011).

10     Plaintiff, however, fails to state any allegations of physical injury to merit allowing him to

11 pursue a claim of mental and emotional injuries, as required by 42 U.S.C. § 1997e(e).  Section

12 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail,

13 prison, or other correctional facility, for mental or emotional injury suffered while in custody

14 without a prior showing of physical injury or the commission of a sexual act (as defined in section

15 2246 of title 18, United States Code)." 42 U.S.C. § 1997e(e).  The Ninth Circuit has recognized

16 that "[i]n drafting § 1997e(e), Congress failed to specify the type, duration, extent, or cause of

17 'physical injury' that it intended to serve as a threshold qualification for mental and emotional

18 injury claims."  *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002). "[F]or all claims to which it

19 applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be

20 significant, but must be more than *de minimis*."  *Id.*, 289 F.3d at 627.  Thus, Plaintiff must allege

21 some form of physical injury or sexual assault which *caused* his mental or emotional injury.

22 Plaintiff's allegations that the Guard One Policy caused him anxiety and nervousness do not

23

24 [1] Defendant's argument that Plaintiff alleges that the beeps from the checks only occurred and caused him one or two
nights of disturbed sleep is inaccurate.  (Doc. 22, p. 7.)  In fact, Plaintiff alleges that it occurred and disrupted his

25 sleep for over a year -- from May 30, 2014, until June 8, 2015.  (Doc. 21, ¶24.)
[2] Courts in this circuit have an obligation to liberally construe the filings of *pro se* litigants, especially when they are

26 civil rights claims by inmates, *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013), and *pro se* complaints
"may only be dismissed 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

27 which would entitle him to relief,'" *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Wilhelm v.
Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012)).  "This rule relieves *pro se* litigants from the strict application of

28 procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship
against them." *Blaisdell*, 729 F.3d at 1241.

suffice.  For 1997e(e) purposes, physical injury must occur *before* the alleged mental or emotional injury, not as a result thereof.  Plaintiff alleges neither physical injury, nor sexual assault as a precipitating factor of his mental or emotional injuries.  Thus, Plaintiff's claim for infliction of emotional damages is dismissed.

However, the Supreme Court has recognized that certain absolute constitutional rights may be vindicated by an award of nominal damages in the absence of any showing of injury warranting compensatory damages.  *See Memphis Community School District, et al., v. Stachura*, 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537 (1986) ("[N]ominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."); *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042 (1978) (approving recovery of nominal damages without proof of actual injury).  After *Carey*, federal courts have consistently awarded nominal damages for violations of rights.  *See, e.g., Schneider v. Cnty. of San Diego*, 285 F.3d 784, 794 (9th Cir. 2002) ("[N]ominal damages must be awarded if a plaintiff proves a violation of his [or her] constitutional rights." (quoting *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000))); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 431 (2d Cir. 1995) (awarding nominal damages for Fair Housing Act and conspiracy to violate First Amendment rights claims); *Wolfel v. Bates*, 707 F.2d 932, 934 (6th Cir. 1983) (per curiam) (affirming award of nominal damages for violation of prisoner's First Amendment rights).

The Ninth Circuit has also held that a plaintiff may be able to show that he is entitled to nominal and punitive damages even where success on the merits of his claim will not entitle him to compensatory damages.  *See Jackson v. Barnes*, --- F.3d ---, 2014 WL 1424448, *2 (9th Cir. April 15, 2014) *ref Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

Punitive damages may also be awarded based solely on a constitutional violation, provided the proper showing is made.  *See Alexander v. Riga*, 208 F.3d 419, 430 (3d Cir.2000);

9

*Basista v. Weir*, 340 F.2d at 87; *see also Coleman v. Kaye*, 87 F.3d 1491, 1497 (3d Cir.1996) ("[P]unitive damages may be awarded under 42 U.S.C. § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' ") (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983)).  "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Stachura*, 477 U.S. at 306 n. 9, 106 S.Ct. 2537.  Accordingly, to the extent that a plaintiff's punitive damages claims stem solely from the violation of his constitutional rights, and not from any emotional or mental distress suffered therefrom, those claims are not claims brought "for mental or emotional injury suffered" and are not barred by § 1997e(e).  *See Oliver*, 289 F.3d at 630; *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000).

Accordingly, although Plaintiff's claim for infliction of emotional damages is dismissed, under *Oliver* and its progeny, his claim for violation of his Eighth Amendment rights survives to the extent he can establish a violation.  He may recover compensatory, punitive and/or nominal damages for any violation of his Eighth Amendment rights.

### C.    Defendant is Not Entitled to Dismissal of Punitive Damages

Defendant contends that Plaintiff's demand for punitive damages should be dismissed because he has not alleged facts regarding Defendant's motive or intent, or facts from which an evil motive or intent could be inferred.  (Doc. 22, pp. 8-9.)

Punitive damages are available under § 1983, *see Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991), and are available even when a plaintiff is unable to show compensable injury *see Smith*, 461 U.S. at 55, n. 21.  Moreover, punitive damages may be the only significant remedy available in some actions under § 1983 where, as here, constitutional rights are maliciously violated but the victim cannot prove compensable injury.  *Id.*, 461 U.S. at 55.  Awards of punitive damages are left to the jury's discretion upon a finding that the defendant either acted with an evil motive or with reckless/callous indifference to the plaintiff's federally protected rights.  *Id.*, 461 U.S. at 54, 56; *Dang v. Cross*, 422 F.3d 800, 807-09 (9th Cir. 2005).

Plaintiff's allegations that, despite receiving his Form-22 request for interview which alerted Defendant that his rights were being violated by the Guard One Policy and its implementation, Defendant failed to take any action for more than a year, suffice, at the pleading stage, to show reckless/callous indifference to Plaintiff's rights under the Eighth Amendment. Thus, Defendant's motion to dismiss Plaintiff's request for punitive damages is denied.

**D.      Defendant is Not Entitled to Qualified Immunity**

Defendant also moves for dismissal asserting that she is entitled to qualified immunity on Plaintiff's claims.  (Doc. 22, pp. 7-8.)

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, --- U.S. ---, 135 S.Ct. 2042, 2044 (June 1, 2015) quoting *Reichle v. Howards*, 566 U. S. 658, 132 S.Ct. 2088, 2092 (2012).  Qualified immunity analysis requires two prongs of inquiry:  "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009); *see also Pauluk v. Savage* , --- F.3d. ---, 2016 WL 4598287, *8 (9th Cir. Sept. 8, 2016).  These prongs need not be addressed in any particular order.  *Pearson v. Callahan,* 555 U.S. 223 (2009).

To determine whether a government official should be granted qualified immunity, under the first prong, the facts are to be viewed "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds by Pearson*, 355 U.S. at 817-21; *see also Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010).

Under the second prong, clearly established law is not to be defined "at a high level of generality."  *White v. Pauly*, --- S.Ct. ---, 2017 WL 69170, *4 (January 10, 2017) quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see also Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 308 (2015) quoting *al-Kidd, supra* at 742.  "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' " *Ibid.* (emphasis added in

*Mullinex*).  "This inquiry ' " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " ' " *Id.*, (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam* ) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))).   "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" to officers, *White*, at *5, quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997), but "in the light of pre-existing law the unlawfulness must be apparent," *id.*, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichel*, 132 S.Ct. at 2092; *see also Castro v. County of Los Angeles,* --- F.3d ---, 2016 WL 4268955, *4 (9th Cir. Aug. 15, 2016).   "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (citation and internal quotation marks omitted).   "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*, at 741.   "[A] 'robust consensus of cases of persuasive authority' " in the Courts of Appeals *could* establish the federal right [in question]." *City and County of San Francisco v. Sheehan,* --- U. S. ---, 135 S.Ct. 1541, 1778 (2015) (slip op., at 16) (emphasis added) (word choice of "could" (i.e. possibility) by the Court noteworthy and distinguishable from a finding that a "robust consensus" of appellate court decisions "*would"* or *"shall"* (i.e. definitive) establish the existence of a federal right).

As discussed in the preceding section, the facts alleged by Plaintiff suffice to show that, if true, Defendant's conduct violated Plaintiff's Eighth Amendment rights.   Thus, under the second prong, case law in existence prior to the date of injury must be reviewed to determine whether implementation of the Guard One Policy to which Plaintiff was subjected, violated a right that was clearly established when it began -- in May of 2014.

It has been clearly established in the Ninth Circuit, since the 1990s, that inmates are entitled to conditions of confinement which do not result in chronic, long term sleep deprivation. *See Keenan*, 83 F.3d at 1090-91; *LeMaire*, 12 F.3d at 1460.  This holding was reiterated by the Ninth Circuit as recently as the year immediately preceding the events alleged in the FAC.  *See*

*Chappell*, 706 F.3d at 1057-61.

When liberally construed, Plaintiff's allegations show that Defendant's conduct violated a constitutional right under the Eighth Amendment not to be confined under circumstances resulting in chronic, long term sleep deprivation -- which was clearly established in May of 2014. *Tarabochia*, 766 F.3d at 1121.  Thus, Defendant is not entitled to qualified immunity at the pleading stage.

### IV.  ORDER

Based on the foregoing, it is **HEREBY ORDERED** that:

(1)     Defendant's motion to dismiss, filed on August 1, 2016, (Doc. 22), is

      **DENIED**; and

(2)     Defendant SHALL file an answer to the First Amended Complaint (Doc.

      21) **within thirty (30) days** of the date of service of this order.

IT IS SO ORDERED.

Dated:   __**March 22, 2017**__                          ___/s/ *Sheila K. Oberto*___
                                        UNITED STATES MAGISTRATE JUDGE